UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

:

PEB, INC.,

:

:

Plaintiff,                          :

:

-v-                        :

:

PREMIUM MERCHANT FUNDING 26, LLC, et al.,         :

:

Defendants.                       :

:

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _11/13/2025_

24-cv-8791 (LJL)

MEMORANDUM AND
ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff PEB, Inc. ("Plaintiff" or "PEB") moves for an order granting reconsideration of the Court's Opinion and Order dated July 1, 2025 (the "Opinion and Order") or, in the alternative, for an order certifying the decision for interlocutory appeal.  Dkt. No. 36.  For the following reasons, the motion is denied.

## BACKGROUND

Familiarity with the prior proceedings in this case is presumed.

Plaintiff is a corporation organized and existing under the laws of the State of California with its principal place of business in California.  Dkt. No. 1 ("Compl.") ¶ 1.  It is a specialty contractor of industrial power plants in California.  *Id.* ¶ 18.  Defendant Premium Merchant Funding 26, LLC ("PMF," and with the individual defendants, "Defendants") is a Delaware corporation with its principal place of business in New York.  *Id.* ¶ 2.  It is engaged in the sale of financial products and services including lines of credit, equipment financing, mortgage financing, term loans, factoring, and merchant cash advances.  *Id.* ¶ 24.  The individual defendants are officers or employees of PMF.  *Id.* ¶¶ 203, 209, 215.

Between October 2023 and January 2024, Defendants advanced approximately $2.4

million to Plaintiff pursuant to eight merchant cash advance agreements (the "MCA

Agreements"). *Id.* ¶ 33; Dkt. Nos. 28-3, 28-4, 28-5, 28-6, 28-7, 28-8, 28-9, 28-10. Plaintiff

failed to pay at least some of the sums due under those agreements. *See* Compl. ¶ 164. In

August 2024, PMF sued Plaintiff and its guarantor Harvey Padilla in New York State Court for

breach of two of the MCA Agreements and the corresponding guarantees signed by Padilla (the

"State Court Action"). Dkt. No. 30-1.

Plaintiff filed the complaint in this case on November 19, 2024. Dkt. No. 1. The

complaint contains two causes of action: a substantive civil RICO claim, 18 U.S.C. § 1962(c),

and a conspiracy civil RICO claim, 18 U.S.C. § 1962(d). *Id.*

On March 12, 2025, before Defendants answered or otherwise responded to the

complaint, the parties agreed on a briefing schedule for Defendants' anticipated motion to

compel arbitration. Dkt. No. 24. The Court "so ordered" that proposed schedule. Dkt. No. 25.

On March 19, 2025, Defendants moved to compel arbitration and to stay this action. Dkt.

No. 26. The motion was based on the arbitration provisions contained in the MCA Agreements.

Those provisions state:

> 5.1 Agreement to Arbitrate All Disputes. 'PMF' and Merchant agree that any
> Dispute shall be resolved by final and binding arbitration. The term "Dispute" is
> defined in the broadest possible manner and includes any and all claims or
> controversies arising out of or in any way related to this Agreement, Security
> Agreement and/or guaranty (collectively 'Agreement') or the relationship between
> PMF and Merchant, whether arising from or relating to the Agreement itself, or
> arising from alleged extra-contractual facts prior to, during, or subsequent to the
> Agreement, and whether those claims [sic] grounded in contract, tort, or other
> theory of law or equity. Dispute also includes any and all claims or controversies
> concerning the scope, validity, and enforceability of this Arbitration and Dispute
> Resolution provision. The Parties agree to arbitrate all threshold questions of
> arbitrability, including but not limited to whether this Arbitration and Dispute
> Resolution provision is enforceable. The phrase 'Arbitration and Dispute
> Resolution provision' shall refer to the entire Section 5.
>
> 5.2 Governing Law. This Arbitration and Dispute Resolution provision shall be
> governed by the Federal Arbitration Act, 9 U.S.C SECTION 1-16 ('FAA'). In the

event a final, binding, and non-appealable judgment finds that the FAA does not apply, this Arbitration and Dispute Resolution provision shall be governed by the arbitration law of the State of New York. All Disputes other than Disputes over this Arbitration and Dispute Resolution shall be governed by the substantive law of the State of New York, regardless of the rules of conflict of laws and regardless of the legal theory which such matter is asserted. . . .

5.7 Who May Enforce this Arbitration Provision. For purposes of this Arbitration and Dispute Resolution provision, 'Merchant' refers to Merchant and Merchant's heirs, successors, assigns, personal representatives, guardians, and/or bankruptcy trustees. For purposes of this Arbitration and Dispute Resolution provision, 'Merchant' also refers to Guarantor and Guarantor's heirs, successors, assigns, personal representatives, guardians, and/or bankruptcy trustees. For purposes of this Arbitration and Dispute Resolution provision, 'PMF' also refers to PMF and PMF's employees, agents, directors, officers, shareholders, governors, managers, members, parent companies, subsidiaries, affiliated entities, attorneys, predecessors, successors, assigns, heirs, and successors. PMF does not consent, and nothing in this Arbitration and Dispute Resolution provision shall be deemed a consent by PMF, to arbitrate any dispute with any person or entity other than Merchant, as defined herein.

Dkt. No. 28-4 §§ 5.1, 5.2, 5.7.[1]

Plaintiff opposed the motion to compel arbitration, arguing that (1) PMF had waived the right to arbitrate by filing the State Court Action, Dkt. No. 29 at 9–15; and (2) that the arbitration provisions did not cover its claims against the individual defendants, *id.* at 15–24.

By Opinion and Order of July 1, 2025, the Court granted the motion to compel arbitration and to stay the action. Dkt. No. 35. The Court analyzed Plaintiff's waiver arguments under two different frameworks. First, the Court reasoned that the parties were free to (and had) delegated to the arbitrator conventional issues of contractual waiver which implicated neither the Court's expertise nor its own interests in protecting judicial processes from abuse. *Id.* at 12–14. To the extent that the dispute between the parties could be framed as based on theories of contractual waiver and an interpretation of the arbitration provision, the Court concluded that such issues

---

[1] The arbitration provisions for each of the MCA Agreements are identical. *See* Dkt. Nos. 28-3, 28-4, 28-5, 28-6, 28-7, 28-8, 28-9, 28-10.

were more properly addressed by the arbitrator. *Id.* More generally, to the extent that Plaintiff's arguments turned upon inferences that Defendants had intentionally relinquished a known right to compel arbitration, the Court determined that Plaintiff should have the opportunity to make that argument to the arbitrator to whom gateway procedural issues were delegated free from a pre-determination of that issue by the Court. *Id.*

Second, the Court concluded that the motion to compel arbitration and, in particular, Plaintiff's opposition to that motion, could also be understood to raise issues of estoppel. Those issues, whether denominated "estoppel" or "waiver" or something else, could not be delegated to the arbitrator because they implicated the courts' expertise and interests in protecting judicial processes. *Id.* at 16. Applying the estoppel framework, the Court rejected Plaintiff's argument that Defendants were precluded from moving to compel arbitration of this action by filing the State Court Action. *Id.* at 17–19. The Court found that Defendants had moved promptly to compel arbitration in this case and had "not asked this Court to take action consistent with the claims before it being litigable, only later to claim that they must be arbitrated." *Id.* at 17. Defendants had therefore not played "fast and loose with the courts." *Id.* (quoting *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953)). In addition, Defendants had not used the State Court Action "as a ploy to obtain procedural advantage in the RICO arbitral action." *Id.* at 18. Nor had they taken "affirmative steps to invoke the powers and resources of this Court other than to seek the instant motion to compel arbitration . . . [or] engaged in the sort of litigation conduct giving rise to 'problems of inconsistency and unfairness' which a court may properly estop." *Id.* at 19 (quoting *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 622 (2002)). This case therefore stood in stark contrast to ones where, for example, defendants attempted to reargue issues upon which the district court had ruled or waited to see how the case

was going before deciding to compel arbitration. *Id.* at 18–19.

As for the individual defendants, the Court concluded that they were third-party beneficiaries of the arbitration provisions and therefore entitled to enforce the agreements' terms against Plaintiff. *Id.* at 20–26.

The Court accordingly stayed the action pending arbitration, permitting Plaintiff to return to the Court if the arbitrator determined there had been a waiver.

Plaintiff filed this motion for reconsideration or, in the alternative, for a certificate of appealability on July 28, 2025, along with a memorandum of law in support of the motion. Dkt. Nos. 36–37. On September 18, 2025, Defendants filed a memorandum of law in opposition to the motion. Dkt. No. 41. On October 20, 2025, Plaintiff filed a reply memorandum of law in further support of the motion. Dkt. No. 43.

## LEGAL STANDARD

"A motion for reconsideration should be granted only if the movant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Spin Master Ltd. v. 158*, 2020 WL 5350541, at *1 (S.D.N.Y. Sept. 4, 2020) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)). "The standard for granting a motion for reconsideration 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the Court.'" *Justice v. City of New York*, 2015 WL 4523154, at *1 (E.D.N.Y. July 27, 2015) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

## DISCUSSION

Plaintiff argues that the Court should reconsider its Opinion and Order or, in the

alternative, certify the decision for interlocutory appeal. Dkt. No. 37. Finding that the Court did not clearly err in issuing the Opinion and Order and that an interlocutory appeal would be inappropriate under 28 U.S.C. § 1292(b), the Court declines to grant either of Plaintiff's requested forms of relief.

## I.    Plaintiff Has Not Established Grounds for Reconsideration.

Plaintiff seeks reconsideration of the Court's Opinion and Order based on the Court's purported "abdication of its exclusive authority granted by Congress to resolve questions of litigation-conduct waiver." *Id.* at 10. Plaintiff's argument contains two parts. First, Plaintiff argues that the Court improperly determined that parties may delegate certain threshold issues, including litigation-conduct waiver, to the arbitrator. *Id.* at 6–10. Second, Plaintiff asserts that even assuming parties may delegate such questions, the Court erred in determining that they had in fact done so this case. *Id.* at 7, 10–19. Plaintiff contends that the Court's decision "represents a departure from its recent opinions, and the opinions of other courts, concerning interpretation of a court's role in deciding whether a party has waived the right to compel arbitration by engaging in inconsistent litigation conduct," and that this departure was not reasonably anticipated. *Id.* at 2. Ultimately, Plaintiff seeks reconsideration so that the Court may consider whether Defendants, by "commencing and aggressively prosecuting" the State Court Action, have waived their right to compel arbitration in this case. *Id.* at 3.

### A.    The Court Committed No Clear Error.

Plaintiff's description of the Court's Opinion and Order gets things only partially correct. In holding that certain gateway procedural issues here can and should be resolved by the arbitrator, the Court was careful not to establish a blanket rule regarding all such threshold issues. Instead, the Court relied upon a central distinction, one which Plaintiff now largely overlooks: Gateway procedural issues such as waiver that do not implicate a court's inherent

expertise or interests in protecting the judicial process may be delegated to the arbitrator, as with any other of a wide range of issues, *see* Dkt. No. 35 at 13; *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (noting that there is a presumption the arbitrator should decide gateway procedural issues including "allegation[s] of waiver, delay, or a like defense to arbitrability" (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983))). If, however, a threshold procedural issue implicates a court's interest in "protect[ing] the integrity of the judicial process," the court "must have [the] power" to decide that issue. Dkt. No. 35 at 14, 16 (first quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); and then quoting *Pacelli v. Augustus Intel., Inc.*, 459 F. Supp. 3d 597, 615 (S.D.N.Y. 2020)).

In drawing this distinction, the Court noted its previous observation that "if a party, on the eve of trial—or even midway through trial—could in the face of an adverse ruling halt all proceedings and make a spontaneous request for arbitration, it would be no answer to a court concerned with its own docket management to say that an arbitrator will determine the issue of litigation-related waiver (when and if the arbitrator turns to it)." *See id.* at 14 (quoting *Pacelli*, 459 F. Supp. 3d at 615). Therefore, parties cannot through an arbitration clause divest a court of the authority to determine whether conduct in litigation precludes a motion to compel arbitration. A contrary conclusion would be untenable. A court "need not wait upon an arbitrator to protect [its] own processes." *Id.* at 17; *see also Schreiber v. Friedman*, 2017 WL 5564114, at *7 (E.D.N.Y. Mar. 31, 2017) ("'[A] party may not freely take inconsistent positions in a lawsuit and simply ignore the effects of a prior filed document.' . . . This policy against permitting a party to 'play fast and loose with the courts' by asserting inconsistent positions concerning its intent to pursue arbitration is *necessary to prevent delay and ensure the integrity of the judicial process*." (emphasis added and citation omitted)). If a party invokes the court's processes and asks the

court to exercise judicial power, the court has the authority to determine whether that invocation of judicial authority is inconsistent with a later request to compel arbitration, regardless of what the parties might have put in an arbitration agreement.  The injury (or prejudice) is to the court and the judicial process, and the court has the authority to address it.

Plaintiff argues that Defendants waived their ability to arbitrate through their litigation conduct and that such litigation conduct *is* the kind of issue that is within the district court's expertise.  Dkt. No. 37 at 6–19.  In its Opinion and Order, however, the Court addresses this argument head on.  The Court determined that while Plaintiff's argument regarding litigation conduct was framed in terms of "waiver," it sounded in the doctrine of judicial estoppel.  Dkt. No. 35 at 15–19.  The Court addressed Plaintiff's argument through the lens of judicial estoppel because in *Morgan*, the Supreme Court expressly left open the question of whether "a party's litigation conduct resulting in the loss of a contractual right to arbitrate" falls within "estoppel" or another rule.  596 U.S. at 416; *see also id.* at 419 (holding that court of appeals on remand may decide the appropriate "procedural framework" for deciding whether a party had "knowingly relinquish[ed] its right to arbitrate" by its litigation conduct).  The Court further invoked the estoppel framework consistent with its observation in *Pacelli* that "[w]hat goes by the name of 'litigation-conduct waiver' is in some ways a form of estoppel."  459 F. Supp.3d at 614.  "[Litigation-conduct waiver] asks whether the party seeking to compel arbitration should be deprived of that right because it has waited 'from when litigation was commenced until the request for arbitration,' enjoyed an 'amount of litigation to date,' and—most importantly—'prejudice[d]' the other side by taking advantage of the tools of litigation and by delaying the motion to compel arbitration."  *Id.* (quoting *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010)).  Put another way, "[w]here a

party asks a federal court to exercise its powers and is successful in doing so, it can be said to take a position with respect to the court's authority that it should not be allowed to withdraw when such withdrawal would cause prejudice to the court and the opposing party."  Dkt. No. 35 at 16.[2]  These principles sound in estoppel.

By suggesting that the Court's Opinion and Order abdicates consideration of whether Defendants lost their ability to compel arbitration through litigation conduct, Plaintiff thus misreads and mischaracterizes the Court's decision.  Dkt. No. 37 at 10.  Plaintiff asserts that courts "inherently have superior knowledge of the intricacies of the litigation process and have a unique interest in regulating conduct of litigants," and that issues of waiver on the basis of such conduct cannot be delegated to an arbitrator regardless of the language contained in an arbitration provision.  *Id.* at 9.  As already explained, the Court agrees that there are instances in which such conduct would result in the Court deciding whether a party is estopped from raising a certain argument (rather than the arbitrator making that determination).  No provision negotiated between two private parties could divest the Court of that authority.  The Court disagrees, however, insofar as Plaintiff suggests that any issue or act somehow related to litigation inevitably implicates either "intricacies of the litigation process" over which courts have superior knowledge and expertise, or courts' "unique interest in regulating conduct of litigants," such that courts alone can decide whether a party has intentionally relinquished a contractual right to compel arbitration.

That not all litigation-related conduct implicates principles of estoppel or courts' unique

---

[2] In that circumstance, it is irrelevant whether the party later seeking to invoke arbitration knew of its contractual rights when it invoked the power of the federal courts.  The harm to the judicial process would be identical whether the party's needless invocation of federal jurisdiction was intentional or mistaken.

competencies is illustrated by example. The Court could conceive of a circumstance where a party has waived its contractual right to arbitrate a particular category of disputes through something occurring in the litigation process (e.g., through an agreement or perhaps a so-ordered stipulation in an apparently unrelated proceeding). Such a party would not necessarily have relinquished its contractual rights to arbitrate through litigation-related conduct as that term is conventionally understood. It might be entirely incidental that the "waiver" took place through an agreement reached in a courtroom rather than in a conference room. Such an intentional relinquishment of a known right is captured instead by the category of "waiver" as expressed in *Morgan*, which requires no showing of prejudice. 596 U.S. at 418–19. In that instance, a subsequent court asked to determine the effect and meaning of the prior agreement to waive arbitration would have no "unique competence" to decide whether a party had intentionally relinquished a known right. Dkt. No. 35 at 13. The meaning of the agreement or stipulation could be determined by the court which so-ordered it or, perhaps, if the parties so agreed, by an arbitrator. The Court's Opinion and Order thus did no more than recognize that there is more than one way in which a party can relinquish a contractual right to compel arbitration, and it permitted Plaintiff, having been unable to convince the Court of its claim that Defendants relinquished their right to arbitrate by litigation-related conduct, to present to the arbitrator a reframed argument that it was somehow Defendants' words and not their conduct that should be understood to prevent them from seeking arbitration.

Labels of "waiver" and "estoppel" make no difference with respect to the present issue of whether Defendants by their litigation conduct "relinquish[ed]" their contractual right to compel arbitration. *See Morgan*, 596 U.S. at 419. Either way, Defendants did not. They cannot be accused of forum shopping, attacking the integrity of the judicial system, taking inconsistent

positions, or improperly delaying in moving to compel arbitration.  Dkt. No. 35 at 17–19.  Nor

can they be accused of "using the State Court Action as a ploy to obtain procedural advantage in

[a] RICO arbitral action."  *Id.* at 18.  At the time that they filed the State Court Action, they had

no reason to suspect they would be sued in federal court and thus no reason to bring the State

Court Action other than to collect on a debt.  *Id.*  The Court accordingly concluded that the cases

cited by Plaintiff were distinguishable on their facts.  "In each of those cases, the effect of the

motion to compel arbitration would have been to divest the court that had invested resources in

the resolution of a particular dispute of any remaining jurisdiction to resolve the dispute."  *Id.* at

19.  Such an outcome would "permit the party seeking arbitration [to] play a game of 'heads I

win, tails you lose,' allowing it 'to see how the case was going in federal district court before

deciding whether it would be better off there or in arbitration.'"  *Id.* (quoting *Cabinetree of Wis.,

Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995)).  Plaintiff still has cited no

authority that would support a contrary conclusion regarding the import of Defendants' conduct.

     The Court did not clearly err in reaching these conclusions.

## B.     Additional Grounds Exist for Adhering to the Order.

     A separate line of cases—one which Defendants cited in their original briefing but which

the Court did not invoke in its Opinion and Order—further supports the Court's decision.

     In the underlying motion papers, Plaintiff argued that Defendants waived their right to

compel arbitration in this case by filing claims in the State Court Action "involving precisely the

same agreements."  Dkt. No. 29 at 14; *see also id.* at 12 ("Astoundingly, PMF now seeks to

compel arbitration in this action while simultaneously, aggressively pushing for a summary

adjudication on its claims *involving two of the very same agreements at issue here*." (emphasis

added)); *id.* at 13 ("Incredibly, PMF seeks to arbitrate PEB's RICO claims while simultaneously

seeking early, summary disposition of its claims in the Supreme Court Action.").  Defendants

responded that their choice to litigate one claim arising out of the agreements did not waive their right to compel arbitration of other claims arising out of the agreements.  Dkt. No. 34 at 4–8.

Defendants have the better of the argument.  It is well established that "[w]aiver of one arbitrable claim through litigation does not result in waiver of other potentially arbitrable claims."  *Stevenson v. Tyco Int'l (US) Inc. Supplemental Exec. Ret. Plan*, 2006 WL 2827635, at *12 (S.D.N.Y. Sept. 29, 2006).  Thus, in *Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126 (2d Cir. 1997), the Second Circuit held that a franchisor had not waived its right to compel arbitration of claims made against it by franchisees when it previously litigated "simple collection proceedings to recover relatively small amounts of unpaid fees and rents under the franchise agreements and subleases."  *Id.* at 133.  Even though the franchisees' claims "attack[ed] the validity of the franchise agreement and arbitration clause on a host of different federal and state law grounds," and even though the franchisor's collection claims arose out of that same agreement, the franchisor had not "litigate[d] substantial issues going to the merits of the franchisees' current claims, and thus [had] not waive[d] arbitration."  *Id.*  The court explained that "only prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate."  *Id.* (explaining that "[o]ther circuits seem to agree that waiver can only occur when a party has previously litigated the same claims it now seeks to arbitrate").  Otherwise, an arbitration clause would be "effectively abrogate[d]" whenever "a party had litigated *any* issue relating to the underlying contract containing the arbitration clause."  *Id.*

Following *Distajo*, courts have consistently held that even when there is "considerable factual overlap" between two claims arising under the same agreement, litigating one does not result in waiver of the right to arbitrate the other unless the legal and factual issues are

effectively "the same." *See Desarrolladora La Ribera v. Anderson*, 2024 WL 5186600, at *17 (S.D.N.Y. Dec. 20, 2024); *Murray v. DCH Toyota City*, 2021 WL 1550074, at *4 (S.D.N.Y. Apr. 20, 2021) (finding no waiver where, as here, the defendants initiated a breach-of-contract action in state court to recover payment, and plaintiffs filed a federal claim in federal court challenging the underlying agreement); *Weiss v. Am. Express Nat'l Bank*, 2020 WL 6807628, at *2 (S.D.N.Y. Nov. 18, 2020) (holding that "[e]ven if there had been more substantial litigation" of the defendant's state-court action raising "simple collection claims," those claims "were unlike the Fair Credit Billing Act, Truth in Lending Act, and New York General Business Law claims at issue in [the federal] litigation," and there accordingly was no waiver); *Hyman v. Cummings-Ramone*, 2025 WL 2549981, at *8 (E.D.N.Y. Sept. 4, 2025) (declining to find waiver based on the defendants' conduct in a state-court action, for "[w]hile there is some factual overlap between the two actions because they both involve the 2005 Shareholders' Agreement and touched upon the RPI Trademarks, the factual and legal issues are distinct").

The caselaw therefore decisively rejects Plaintiff's suggestion that claims involving "precisely the same agreements" or "aris[ing] out of the same nucleus of operative facts," Dkt. No. 29 at 12, 14, necessarily implicate issues of waiver. Indeed, courts have gone so far as to hold that a plaintiff may exercise its right to arbitrate counterclaims filed against it *in the very same case* if the issues presented are distinct. *See, e.g.*, *Stevenson*, 2006 WL 2827635, at *12; *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 420, 428 (S.D.N.Y. 1998). And in *Distajo*, the Second Circuit suggested that a plaintiff's failure to plead counterclaims in a state action undermines a finding that the two cases involve the same dispute. 107 F.3d at 133. Plaintiff's assertion that it would be "anomalous" to litigate some claims in state court while arbitrating others is therefore unfounded. *See* Dkt. No. 43 at 8.

Here, the Court has little difficulty concluding that the claims at issue in the state and federal suits are "legally distinct" and that Defendants have therefore not waived their right to compel arbitration. As in *Distajo*, *Weiss*, and *Murray*, Defendants have brought "simple collection claims" for breach of contract in state court. Dkt. No. 34 at 7; *see Distajo*, 107 F.3d at 133; *Weiss*, 2020 WL 6807628, at *2; *Murray*, 2021 WL 1550074, at *4. And as in *Distajo*, *Weiss*, and *Murray*, Plaintiff has brought federal claims in federal court—here, civil RICO causes of action—which, among other things, challenge the legality of the underlying agreements. Dkt. No. 1; *see Distajo*, 107 F.3d at 133; *Weiss*, 2020 WL 6807628, at *2; *Murray*, 2021 WL 1550074, at *4. Notwithstanding some factual overlap between Defendants' claims and Plaintiff's, they are unalike; litigation of one therefore does not preclude arbitration of the other. Importantly, Plaintiff has not specifically identified any position, argument, or issue that Defendants have sought to litigate in the State Court Action but that they now have moved to arbitrate in this case. Defendants accordingly have not acted inconsistently and have not waived their right to arbitrate.

Reconsideration therefore would not change the outcome of the Court's Opinion and Order.

## II.    No Interlocutory Appeal Is Warranted.

Plaintiff argues, in the alternative, that the Court should certify its Opinion and Order for interlocutory appeal to the Second Circuit. Dkt. No. 37 at 19–24; Dkt. No. 43 at 8–11. Plaintiff asserts that "since the rendering of *Morgan v. Sundance, Inc.*, the law and standard in the Second Circuit to be applied when evaluating waiver has been confusing, inarticulate and contradictory." Dkt. No. 43 at 2–3. It is true that the correct rubric for analyzing claims that a party has lost its contractual right to arbitrate through litigation-related conduct remains an open question in the Second Circuit (and more generally). *See Doyle v. UBS Fin. Servs., Inc.*, 144 F.4th 122, 127

n.*3 (2d Cir. 2025) (declining "to depart from the framework and terminology of waiver *here*" (emphasis added)); *Morgan*, 596 U.S. at 416 (likewise declining to address "whether to understand [the] inquiry as involving rules of waiver, forfeiture, estoppel, laches, or procedural timeliness").

This case, however, does not squarely present those issues, for the Court has considered Plaintiff's arguments under both the rubrics of waiver and estoppel and has found that Plaintiff prevails under neither. Section 1292(b) of Title 28 of the United States Code provides that leave to appeal should be granted only if (1) the appeal "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *In re Lehman Brothers Holdings Inc.*, 2019 WL 2023723, at *3 (S.D.N.Y. May 8, 2019) (quoting 28 U.S.C. § 1292(b)). There is no substantial ground for difference of opinion as to the principle that "only prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate." *Distajo*, 107 F.3d at 133. Because that principle resolves this case, certifying an appeal regarding the issue Plaintiff seeks to address would not implicate a "controlling question" or materially advance the termination of the litigation.

The Court therefore declines to certify its Order for interlocutory appeal.

## CONCLUSION

The motion for reconsideration or, in the alternative, certification is DENIED. The Clerk of Court is respectfully directed to close the motion at Dkt. No. 36.

SO ORDERED.

Dated: November 13, 2025
      New York, New York

                                    LEWIS J. LIMAN
                             United States District Judge